Good morning. Good morning. May it please the court, Jonathan Libby appearing on behalf of Appellant Bridgette Jackson. I intend to reserve two minutes for rebuttal. Your Honors, unless the court has any objection, I plan to focus this morning on the two trial-related issues, the denial of the request for substitute counsel and precluding questioning on the fairness of the police investigation, either of which would result in a reversal of Ms. Jackson's conviction. Let's go to the substitute counsel. So that the counsel that we're talking about was her third counsel, correct? It depends like, no, Your Honor. I guess it depends on what you're referring to. Didn't she maybe hire someone and then she had court-appointed counsel and this was her second court-appointed counsel or something like that? I don't recall her having private counsel. She had court-appointed counsel, which is the Federal Public Defender Office. Mr. Perotta then left the office and was replaced by Mr. Kim, but she was represented by the Federal Public Defender Office the entire time. So she never, so this wasn't her first lawyer? Hadn't she had changes of lawyer previous to this request? No, Your Honor. She had not previously made any substitution requests. So she simply expressed general dissatisfaction with counsel, nothing more. She provided no additional information nor was any later provided as to any actual conflict, let alone one that was irreconcilable. The district court denied a request for new counsel summarily and without a hearing. So how did the district court abuse its discretion if there was no notice of any irreconcilable conflict, any problem going on? And I think the district court just said something like, no, your counsel's competent. That is what Judge Real said. And the lawyer there didn't say anything more, didn't make any more primus facia showing. Wasn't it just she wants another lawyer? Your Honor, there was no court proceeding in this matter on this issue. Counsel informed the court based on the request by Ms. Jackson that Ms. Jackson wanted new counsel, that there were differences. She was having problems with defense counsel. And we certainly admit it was a skeletal request, but that's all that's necessary, Your Honor. It brought to the court's attention that there was a conflict between defense counsel and the court's counsel's request. Your Honor, that's at, I believe it's page 22 of the excerpts. If I could grab my excerpts. Sure. And then just read it to me exactly what the lawyer said. So they were in court. No, Your Honor, this was not in court. Where were they? This was, there had not been any court appearance yet at this point, at least not in front of Judge Real. Was there a motion filed? That is what exactly what was filed. And that's on page, it starts on page 22. 22 to 23. Recently, Ms. Jackson has expressed dissatisfaction with appointed counsel. Was there any further offer of proof in any way as to what that dissatisfaction was based on? No, Your Honor. But let's understand where we are at this point. The defendant is being represented by counsel that she has expressed issues with. She has not permitted to express any issues except her dissatisfaction. And she had the same counsel in another case. That is correct, Your Honor. And she had two stipulations or two continuances where she indicated she had been just adequately advised by her lawyer. Your Honor, Mr. Kim did not represent her in the other case at that time. She had been represented by Mr. Perotta from my office. She had entered a plea in a different case, right? And then that case got continued, okay? Mr. Kim had been assigned by my office to represent her ostensibly in the other case as well as in this case, okay? She was a continued – she had been indicted in June. Discovery had not been provided to the defendant, to defense counsel at the time of a first continuance request. A second continuance request was then made by the parties, a stipulation on November 4th. On November 5th, a superseding indictment was filed. On November 6th, defense counsel at Ms. Jackson's request filed the motion with the court. Well, did he file an improper motion? I mean, did he – not by not putting any facts in it? You just can't say, well, I don't like my lawyer anymore. Your Honor, Ms. Jackson did not prepare the declaration. Defense counsel with whom Ms. Jackson was having conflict with – From your office. Correct. Submitted the application on her behalf as he was obligated to do. But he – Was he obligated to not put any reasons in? Your Honor, they weren't communicating. That perhaps is part of the problem. When – Well, why didn't he say that? Why didn't he say, I'm not communicating with this woman because she won't talk to me? Your Honor, there's issues of attorney-client privilege. There are a number of issues that – Well, that doesn't affect attorney-client privilege to say I can't communicate with my client. She – he was not alleging anything, Your Honor. He was submitting an application on – A lawyer? Beg your pardon? Was he her lawyer? Was he her lawyer? Yes. Yes, which is why – Then why didn't he do what a lawyer should do and give some reasons for what she – what the client wanted? Your Honor, this is a situation that arises in courts every day, in this State, both in Federal and State court. In State court, it's called a Marsden hearing. It's not complicated. It is a typical process that comes up. Defendants allege that they're having problems with their lawyer. A court is then required to hold a hearing. That is – and here, the court did not hold a hearing. The court simply issued a one-page written order with a handwritten notation denied counsel is competent, which this court has made very clear is not a permissible basis for denying the request for due counsel. The court was obligated to hold a hearing, at which point – which this court has said should be in private, because these are matters that implicate attorney- client privilege. It's supposed to be in private. Typically, the prosecutor – But does the motion say anything to effect that I would be prepared to go in camera and give more detail to the court as to why – because it ultimately has to be not that you just don't like someone. There has to be a breakdown, right? That's correct, which is what the court is supposed to do. And I know what a Marsden hearing is. I've done Marsden hearings. Absolutely, Your Honor. So that's the – but just not liking your – just not being happy isn't that – if all that came out from the hearing was you're not happy, then that would not – you know, that would not result in a removal. So why – it isn't – yes, I agree. Sometimes there is attorney-client privilege, but to say that the relationship is broken down, that there are irreconcilable differences, I would be prepared to – you know, we request a hearing, and I would be prepared to go in camera and tell the court those. Then you would have a lot better – you'd be making a lot more persuasive argument. Except, Your Honor, it is not counsel that wanted the hearing. It is the defendant who has a conflict, a potential conflict with counsel, who wanted the hearing. And that is why case after case after case after case makes very clear the court has to hold a hearing to question the defendant to see what the defendant's concerns are. Defense counsel – there was a breakdown. Defense counsel wasn't there to represent her complaints about her conflict with him. It was for the court to question her about the potential conflicts. Do you have a case that says that merely a hearsay statement by an attorney as to his client's dissatisfaction with his services is – triggers a constitutional right to have a hearing? Well, Your Honor, the request very clearly was a request for new counsel. All right? The base – Did you – did you hear my question? Yes, Your Honor. And to complete my answer, Your Honor, numerous cases say that. Certainly Moussa and Gonzalez and D'Amore and Wynn in all of the cases that we have cited in our briefs make very clear this is the process. Except Smith makes very clear that the failure to conduct a hearing is not by itself an abuse of discretion when there's no reasons given. No, Your Honor, let's be clear what Smith says. Smith says, yes, if there is evidence in the record to demonstrate there is not a conflict, which in Smith the court had already denied twice before trial, had already denied substitution requests, and then throughout the trial the court observed the interaction between the defendant and defense counsel and was able, based on that, to determine whether or not there was a complete breakdown. Here, Judge Reel never saw the two of them together, never saw Ms. Jackson and Mr. Kim together. They had not yet appeared in front of Judge Reel. They did not do that until December 1st. So the court was not in a position to observe and make a judgment. So Smith doesn't – doesn't apply here, Your Honor. What applies are all of the other cases that we've cited, which says the court is obligated to hold a hearing and inquire. It's the simplest thing, and it doesn't take long. And the court simply refused to do it here. And, again, we've – in Moosa, by the way, Judge Reel was the judge who was reversed for doing exactly what he did here. And we've noted in Footnote 3 of our opening brief that there are at least a half a dozen other times in which Judge Reel has been reversed on this very same issue. We're talking about this case right here. Well, that's right, Your Honor. And so – Okay, your time is up. Yeah, you're in over time, but I'll give you a minute for rebuttal. I appreciate that, Your Honor. Okay, thank you. Good morning, Your Honors, and may it please the Court. Good morning. Your Honor, I want to start by addressing this issue of whether, in fact, there was a – Will you state your name for the record? I'm sorry, Your Honor. My name is Eddie Hargi, Assistant United States Attorney for the United States. Your Honor, I want to address this issue that Ms. Jackson had alleged that there was a conflict or a breakdown between herself and her attorney. That, of course, never happened. The only thing that was said here by the Deputy Federal Public Defender was that she had recently expressed dissatisfaction with her counsel. It is the preference of this Court that the District Court conduct a hearing when something – when a defendant makes an allegation of some kind of conflict between herself and the attorney. But in this case, number one, she hasn't alleged a conflict or an irreconcilable conflict or a breakdown of communication or of trust. And number two, the Court did have a sufficient basis for making its determination, a sufficient basis for making an informed decision. And let me just highlight briefly what those bases were. At this point, she files her – counsel files his ex parte application for a hearing on November 6th. He had been representing Ms. Jackson at that point for about 20 days. In that time period, he had filed jointly with the government three stipulations indicating that he had been in regular communication with his client. Two of – one was for a protective order and two were for continuances of the trial date. In the continuances – in the request for the continuances of the trial date, she had signed those stipulations and she indicated that denial of a continuance would deny her continuity of counsel, indicating that she wanted to continue with her counsel. The most recent of those stipulations was filed only four days before the ex parte application was filed by DFPD Kim. More importantly, as – I can't remember who, I apologize – one of the members of this Court highlighted, she was represented by Mr. Kim in another federal case. And she had already been represented by him at the time of the application. The docket reflects that she had been released on bond on the same terms as in the other case, indicating that the district court in this case was aware she had another parallel federal criminal case. As we noted in our brief, she never once made any claim that she was having differences or dissatisfaction with that very same counsel in that other case. She, of course, continues on with the same counsel. On December 1st, we showed up for trial. That was, at that point, the trial date. The motion was, what, two weeks before trial? The motion was approximately two weeks before trial, yes, Your Honor. Okay. There was a December 1st trial date. The Court had continued the trial from November 24th to December 1st. On November 6th, the trial was December 1st. The ex parte application was filed on November 6th. I believe the trial at that point was set for November 24th. All right. Ultimately, the Court continued the trial to December 1st. At that point, the judge said, well, she hasn't been arraigned on the first superseding indictment, so we're not going to go today. We're going to go later. Ms. Jackson was in court with Mr. Kim. The issue was not raised. She then proceeds to trial with Mr. Kim and another Deputy Federal Public Defender, Mr. Lindsey. Mr. Kim continues to represent her through sentencing. He accompanies her to the pre-sentence interview that's in the record. He represents her at her sentencing in the other case. And never again does she raise this issue that she was dissatisfied with counsel. And clearly there was no irreconcilable conflict, no breach of trust, no complete collapse of communication. All the things that the cases cited by the defense say has to happen. None of those things happened in this case. In preparation for today's hearing, Your Honor, I came across something in the excerpts of record that I should have put in my brief and I didn't, which was on the December 1st hearing, the court made some evidentiary rulings before the trial began. I'm sorry. Yes, I think it was on December. Well, it might have been at the time of trial, at the time the trial actually started. The court made some evidentiary rulings. He then looks to the defense and he says, and this is in ER 41, now that you have, and I'm paraphrasing, now that you have my evidentiary rulings, do you want to discuss with your client what she's in for? Again, I'm paraphrasing. He says, I've done that, Your Honor. We have. I have. And the government has made no other plea offers since we were last here, indicating that in that time period he, again, was having communications with her, not just about the stipulation for the protective order, not just about the two stipulations to continue the trial date, but about plea offers. One other fact, Your Honor, is that before trial began, he filed another request on Ms. Jackson's behalf, and that was a request to modify the terms of her bail. And in that application, that's also in the docket, Your Honor, and in that application he talks about her work, what she's doing, and why she needs a modification of her bail terms so that she can continue to do work. Clearly there is regular communication between Ms. Jackson and her counsel. Clearly there's not a complete collapse of the relationship or a complete collapse of communication. I think it was clear to Judge Reel at the time that he denied the ex parte application, the request for a hearing, and certainly clear at the time that he later explains it, because it didn't come up earlier, but when he denied the motion for bail pending appeal, he explained that he had another basis for denying the request for a hearing, and that was that it was clear to him at the time that he denied the bail motion, just as it was back on November 6th or November 10th when he denied the ex parte application, that this was just another unreasonable delay tactic. The case was moving forward. She had filed numerous stipulations. It was clear that she was communicating with her counsel, and Judge Reel saw it for what it was, which was just a delay tactic. One other thing, Your Honor, as I was looking at the docket, again while I was waiting to come up here, at the time that she filed the ex parte application for a hearing, or Mr. Kim did, her aunt had already pleaded guilty. So she saw the writing on the wall, things were moving, Judge Reel was pushing the case ahead for trial, and suddenly she files this ex parte application for a hearing. It is skeletal, as Mr. Libby concedes, and Judge Reel decided. It's skeletal because it's made by the attorney, not by the client. I mean there's a certain amount of bias by the attorney not to accuse himself of doing something that the client doesn't like. It may be, Your Honor, but I don't think Mr. Kim would have been putting himself in a bad position by saying we have had a breakdown in our relationship or we have had a breakdown in communication, but he couldn't bring himself to do that. I think it's pretty telling that all he says in one line is, recently my client has expressed some dissatisfaction with me, and she requests that I ask this court for a hearing. So the question is, should Judge Reel have had a hearing? He probably should have had a hearing pursuant to this court's precedent or he should have inquired at least, but he didn't have to, and he didn't have to because there was a basis for him to make an informed decision to deny the request for a hearing. If the court has no questions on that issue for me, I'll move on to this. I see my time is winding down, so I want to move on to the second issue with regard. So if we felt that he should have had a hearing, is that structural error? No, Your Honor. I think in this case, as in Moussa, which was the primary case relied upon by the defense, what would have to happen is a remand to the district court to determine whether there was, in fact, a breakdown in the relationship between counsel and his client, and if there was no breakdown, then I think the case stands. If there was, then if the court finds that there was a complete breakdown in the relationship, denying her effective assistance of counsel and a violation of her Sixth Amendment right, then maybe the court would have to reverse and send it for a new trial, but clearly that is not what is happening in this case. So how many, okay, after the ex parte, how many times were Mr. Kim and the defendant in front of Judge Roehl and never mentioned this? After the ex parte, which was on November 6th, we were in court on December 1st, ostensibly for a trial. That then was continued to January 19th. Then, of course, there's a two- or three-day trial sentencing, so it would have been three more times. Okay. And several days. And several days. And the issue is never raised again. Okay. Thank you. Thank you. And then I have only 20 seconds. Would the court like me to address the second issue with regard to the evidentiary rulings made by Judge Roehl? Well, we don't have any questions, so you can do whatever you want in six seconds. Then I'll rest on my papers, Your Honor. Okay. Thank you very much. I'll give you a minute. Thank you, Your Honor. Your Honor, again, as Judge Baio recognized, this was not Ms. Jackson who was submitting anything to the court. It was the court. It was her lawyer on her behalf at her request, which is how it has to work because she is not permitted to simply file documents on her own with the courts. The government concedes that there should have been a hearing because that's what the case law says. There needs to be a hearing. There needs to be an inquiry. And there was nothing in the record that would have allowed Judge Roehl to decide anything here. Judge Roehl had had no contact with the defendants or defense counsel at this time. And it's not a mystery why Ms. Jackson likely did this. She filed this or the defense counsel filed this two days after the continuance request was submitted in which it indicated a continuance was necessary. And this is Government Excerpts of Record 11. It was necessary because defense counsel had not communicated with defendant, had not reviewed the discovery, had not conducted any investigation, had not conducted any legal research, and that's why it was necessary for the continuance. And it was right after that she said, I am concerned about my lawyer and I'd like a new attorney. And so there shouldn't be any question why the request was made. I see my time has expired. I thank the court. Thank you for your argument. This matter will stand submitted.
judges: Kelly, Callahan, Bea